# CASES DETERMINED

IN THE

# ST. LOUIS COURT OF APPEALS.

## OCTOBER TERM, 1878.

---

THOMAS J. HENLEY, Respondent, *v.* HENRY A. CLOVER ET AL., Appellants.

### October 22, 1878.

1. Where the principal asserts no claim adverse to that of any party litigant, · but where the agent's right to continue his agency is involved in the suit, he cannot expend his principal's money in litigating the question.

2. Justices of a County Court have no authority to employ counsel, at the expense of the county, to litigate the question as to whether a scheme of separation had been adopted, the effect of which was to abolish the County Court, but in which litigation the county asserted no claim adverse to that of either party.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

GEORGE P. STRONG, for appellants.

WAGNER, DYER & EMMONS, for respondent.

LEWIS, P. J., delivered the opinion of the court.

The defendant Henry A. Clover is an attorney-at-law, and his co-defendants were members of the County Court of St. Louis County, as organized prior to the adoption of the Scheme of Separation and the new Municipal Charter of the city. The plaintiff prays for an order to restrain and.

perpetually enjoin the payment out of the county treasury of an allowed claim of $1,000 in favor of defendant Clover for professional services rendered at the instance of the other defendants. The Circuit Court granted a temporary injunction, and on final hearing made it perpetual.

The substantial facts of the case appear in the bill of exceptions, as follows : —

" That the plaintiff was at the time of the institution of this suit a citizen and tax-payer residing in the city of St. Louis ; that the defendant Clover was by an order of the County Court of St. Louis County, of date the 16th of October, 1876, authorized to appear on the part and in the behalf of the county of St. Louis to a certain suit then pending in said Circuit Court, in the name of the State, at the relation of Thomas J. Henley *et al.*, against Henry Overstolz, mayor of the city of St. Louis, and C. F. Shultz, presiding justice of the County Court of St. Louis County, defendants, the object of which suit was to obtain a *mandamus* on said mayor and presiding justice, to compel them to certify that the Scheme and Charter had been adopted ; that it appeared from the certificate of the clerk of the County Court, made out and delivered to the mayor and presiding justice, that the said Scheme and Charter had not been adopted ; that if said Scheme and Charter were adopted, the effect thereof was to abolish the County Court, and would also operate to transfer to the new municipality a large amount of real and personal property before belonging to, managed, and controlled by the said county of St. Louis through its County Court ; that the order of the County Court above referred to left entirely with Mr. Clover and his co-counsel the manner in which they should proceed, whether in their own or some other names, or in the name of the county of St. Louis ; that in pursuance of such employment by the County Court the said Clover did energetically enter upon the duty so imposed upon him, and, though using the names of others (with their consent), it was always as attorney of

the said County Court and in its behalf, in pursuance of its order; that the terms of his retainer were such fee as at the conclusion of his services should be fixed by said County Court; that when his labor had been concluded, the County Court fixed his fee at one thousand dollars; that a warrant was by said County Court ordered to issue for said sum of one thousand dollars to said Clover, but before the same was signed this injunction was granted; that if said Clover is entitled to be paid any thing by said county for his services rendered in the cause, the sum of one thousand dollars is a reasonable fee; that the litigation in the said *mandamus* case in the Circuit Court and Court of Appeals lasted for two months or more; that said Henley, the plaintiff, knew of the order of the County Court retaining said Clover, and also knew of the services performed by him in court at the time and times thereof, — *i.e.*, of the making of the order and rendition of the services; that said Clover was not retained by either plaintiff or defendants in said suit, nor at their or either of their requests."

The principal ground of defence appears in the extensive changes which were to be effected in the affairs of St. Louis County by the issuing of the certificate, to compel which the *mandamus* proceeding was instituted. The county and the County Court, as existing hitherto, were to be abolished, and new political subdivisions and civil functionaries were to be introduced in their stead. The county was owner of a large amount of real and personal property, and had pecuniary interests of great magnitude, which at all times required intelligent and faithful care and protection. All this property and these interests were in the custody, control, and management of the County Court as the county's authorized administrative agent.

It has never been questioned that an administrative agent in public affairs, occupying such a position as that held by the County Court, may, at the expense of its principal, employ counsel in any litigation which directly affects the

interests committed to its charge ; and this, although the principal be not a party to the suit. It is unquestionable also that the agent's discretion in such matters, when once exercised within its lawful boundaries, cannot be judicially reviewed. If these well-settled principles be applicable to the present case, the defendant Clover was entitled to be paid the fee allowed him by the County Court, and the judgment of the Circuit Court ought to be reversed. But if it appear that the County Court has undertaken to expend the money of its principal in a litigation upon matters which were never committed to its fiduciary charge, the injunction was properly decreed, and must remain.

In all the cases to which we are referred in behalf of the defendants, the real principal in interest was a party to the suit, or else asserted a claim antagonistic to the interest of a party or parties litigant. In *Washington University* v. *Rowse*, 42 Mo. 308, the plaintiff sought to avoid the payment of certain taxes to the defendant as collector of the revenues of St. Louis County. Here was a subject-matter directly within the category of public interests committed to the guardianship of the County Court. The county's interest was adverse to that of the plaintiff in the suit, whose ultimate success would operate a diminution of the public revenues. The loss, if any, would accrue to the county as a unit. The County Court, as its agent, employed counsel to prevent such a loss. The other cases relied on by defendants, although various in their facts and circumstances, stand upon a similar footing. The agent, in every instance, undertakes to protect the principal's rights and interests against invasion by an outside party.

But in the case before us we discover a very different aspect of affairs. It would seem that the litigation which excited the activity of the County Court involved, not so much the property or interests of the principal, as the *status* of the agent. The danger threatened, if any, was not that a valuable property might be lost to the county,

but that its fiduciary management and custody might pass into other hands.

The people of St. Louis County were constitutionally authorized to determine by a popular election whether they would continue in their existing condition as a political subdivision of the State, or would be separated into two distinct bodies politic upon a basis of division between them of the property and interests hitherto held by a common title. Here was no question of invasion or deprivation of any title or possession enjoyed by the county. The worst that could be apprehended was a possible sharing of the common property among its common owners, upon terms previously settled by themselves. The question of division or no division was to be determined by the people of the entire county, who were the principals in the transaction. The litigation for which defendant Clover was retained would do no more than ascertain whether these principals had or had not settled this question affirmatively. The County Court was never intrusted with any power, discretion, or agency in the matter. It had no right to speak or to act for the people of the county on one side or the other of the pending issue. Surely it could not say to them, "We consider this proposed separation and division hostile to your welfare, and, whether you desire it or not, will therefore spend your money to defeat it." With just as little propriety could it espouse the opposite side of the question, and employ the money of the people in aid of litigation to enforce the separation. If it could lawfully espouse neither side of the issue, how could it lawfully employ counsel to influence the litigation in any way? It is suggested that defendant Clover, as *amicus curia*, was not to be an advocate for either party in the *mandamus* case, but was only to see that the laws were fully and fairly administered. The flavor of impartiality here intimated seems hardly consistent with the points now urged for the

defendants.  Our attention is directed to statements in the record showing "that the defendant Clover was by an order of the County Court  *  *  *  authorized to appear on the part and in the behalf of the county of St. Louis ;" that a certain result of the *mandamus* proceeding would "abolish the County Court, and would also operate to transfer to the new municipality a large amount of real and personal property belonging to, managed, and controlled by the said county of St. Louis through its County Court ;" and that "the said Clover did energetically enter upon the duty so imposed upon him, and *  *  *  always as attorney of the said County Court and in its behalf," etc.  If these expressions indicate any thing as to what the County Court proposed to accomplish through its counsel, it is that the transfer to the "new municipality" was to be prevented if possible.  It is not unfair to say that the whole line of defence in this cause is adapted to exclude any doubt that the counsel was employed specifically to defeat the application for a *mandamus*, and that his talents and learning were faithfully and zealously devoted to produce that result.

The argument drawn from the fact that a large amount of property might be transferred away from the county of St. Louis, with the proposition that the County Court, as guardian of the county's interests, was therefore authorized to provide for the intervention of counsel in its behalf, seems to arise from a confounding of rights and interests which are wholly independent of each other.  The people of the proposed new municipality were a part of the same people who had constituted the county of St. Louis.  So far as they were concerned, the transfer, if any, would be from themselves to themselves.  They had no need of counsel, either to favor or oppose.  The new municipality was not to be a new owner or proprietor, but a new administrative agency for the same proprietors, superseding their

rormer agent, the County Court. The question was, therefore, not as to the property rights of the principal, but as to the retention or discharge of the agent.

As to that part of the county lying outside of the new city boundaries the case is no better. By the Scheme of Separation, no transfer of property was to be made to that section. Its interest in certain property was, for a consideration, to be conveyed to the new municipality. But it needs no argument to show that the County Court could not fairly retain counsel in advocacy of this sectional interest, as antagonistic to that of the inhabitants of the city, and crown all with an assessment upon both sections to pay the expense.

The original subject-matter of the *mandamus* case was one upon which the people of St. Louis County were divided into two parties. A division of sentiment had been anticipated by the Constitution, in its provision for a popular election. The County Court had no right to enter the field with the public funds in aid of either party, or to assume that the interests of "the county" were best represented by the one or the other. Any attempt so to influence a settlement of the controversy would have been beyond the powers conferred upon that body in the laws of its creation and control. If this prohibition of interference was properly applicable to the popular election upon the Scheme and Charter, there is no reason why it should not be equally so to a judicial proceeding in which the essential issue was the same.

Let us suppose that proceedings in *quo warranto* had been instituted against the several members of the County Court to test their rights of occupancy of their official positions. Let us then suppose them reasoning thus: "A large amount of valuable property belongs to the county of St. Louis, and is managed and controlled by it through us, its administrative agents. The success of these proceedings would operate to transfer this property, with its

management and control, to a new and different County Court, or other agency. As faithful guardians of our trust, we must see that the laws governing the case be fully and fairly administered, and that no such transfer be effected unless it be strictly in accordance therewith. We will therefore employ counsel, at the expense of the county, to defeat these proceedings, and so keep ourselves in office." It is impossible to believe that the members of the County Court could have adopted such a course of reasoning; and yet, upon a full analysis and proper understanding of the subject, there appears little or no difference between it and the methods relied upon to sustain the orders of that body appearing in this cause.

We are referred to a class of cases in which public officers are held to be justified in employing counsel at the public expense, in suits to which they are parties, for the purpose of vindicating their own official acts. These decisions have no application here, since it is admitted in the record that the defendant Clover " was not retained by either plaintiff or defendants in said suit, nor at their or either of their requests."

The judgment of the Circuit Court is affirmed. All the judges concur.